## Case No. 10,761.

### PARKHURST v. KINSMAN.

[3 Woodb. & M. 168.] [1]

Circuit Court, D. Massachusetts. May Term, 1847.

SPECIAL BAIL—TORTS — AFFIDAVITS AND PROOF— AMOUNT OF DEBT OR DAMAGES—ANOTHER SUIT PENDING.

1. In states where no statute exists regulating special bail, it may be required in cases of tort as well as contract, and without affidavit, as to the true amount of the debt or damges.

2. But a motion may be made to a judge of the court to which the writ is returnable, before the return day, to reduce the amount; and it will be complied with if affidavits or other evidence are produced which prove the present amount to be unreasonable.

3. The ad damnum in the writ, and the sum demanded in the declaration, are the primâ facie guides to the sheriff.

4. The affidavits and proof must show what is expected to be recovered in the present action; and not the whole claim of the plaintiff, some of which is not competent evidence under this form of action.

5. On this motion the court will not go into and decide a doubtful question as to jurisdiction over this action, but leave it to a motion or plea after the return of the writ.

6. If another suit is pending elsewhere for the same cause of action. the bail will be reduced to a nominal sum, or only common bail allowed.

This was an application to reduce the amount of bail which had been taken in an action by the above plaintiff [Stephen R. Parkhurst] against the defendant [Francis Kinsman]. The suit had been instituted on the 20th of August, 1847, returnable to the

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

next October term. The defendant was arrested the day after, and a bail-bond demanded and taken, for $20,000, with sureties. The motion was made early in September, A. D. 1847, during an adjourned session of the May term, and the respondent appearing and asking time to send to New York where the plaintiff resides, for evidence to resist the motion, it was granted, as the respondent was not in prison, but had obtained bail. The motion came on for final argument and decision, September 24th. The defendant showed that the plaintiff had instituted a bill in chancery against the defendant, and another person in New Jersey, and a like bill in New York against him and one F. W. Hale; the first sometime in 1846, and the last, February 9th, 1847. In those bills it was admitted or proved that after the patent had been obtained by the plaintiff, he conveyed one-third of it to the defendant for $3,000, and had been paid $2,000 of the same. That the defendant was to make and vend the machines, securing a profit of $100 on each, and account for his sales and receipts; and after paying himself for any advances for tools and stock, was to pay over to the plaintiff his proportion and allow him to make and vend the machines afterwards on certain terms then arranged, but which it is not necessary to detail. Such proceedings appeared to have been had in New York as to lead to a decree of injunction against the defendant, not to use the machine longer, and to render an account of his expenditures and receipts in connection with it. The defendant then filed an affidavit that he in truth owed the plaintiff nothing, and that the plaintiff had no cause of action against him except what was set out in the bill filed in New York, and that the present suit and arrest were vexatious, and he ought to be discharged without bail or merely on common bail. The plaintiff then showed that the declaration in this action was trespass on the case, for an infringement of a patent-right for a machine to clean cotton or wool, alleged to have been invented by him, and a patent obtained for it, May 1st, 1845; and that it was violated by the defendant on the 8th of July last, and divers other times; but not stating where, nor that either party was a citizen of Massachusetts. Both were described as belonging to New Jersey, but the defendant to be then "commorant" in Massachusetts. The plaintiff also filed evidence that he had attempted to get service of the injunction on the defendant in New York without success; that he believed the defendant justly owed him $25,000, the sum demanded in damages in the writ; and that the defendant was without property in New York, and according to his belief, insolvent.

Mr. King, for plaintiff.

Charles Levi Woodbury, for defendant.

WOODBURY, Circuit Justice. The question as to what is excessive bail and what are the proper grounds for fixing the true amount is in some cases difficult. But such is the jealousy in this country against requiring an unreasonable sum, that the constitutions of some states undertake expressly to prohibit it, as does the constitution of the United States. See Const. N. H. art. 33, Bill of Rights; Const. U. S. Amend. 8. Especially is it improper to require an unreasonable sum in criminal cases, where the data for fixing a proper one are more certain, and where personal prejudice can operate more freely without detection. At the same time, in both criminal and civil cases, a duty exists in public officers to require sufficient bail at the peril of a suit against themselves, if not acting honestly and fairly; and here, in revising the sum, no censure or correction is proper unless the amount is clearly unreasonable. Evans v. Foster, 1 N. H. 374, and cases cited; 2 Chit. Gen. Prac. 370; Craig v. Brown [Case No. 3,328].

The twenty-third rule of this court, under which this motion is made, requires that the sum be "unreasonable" in order to justify a reduction. In England and several of the states, there are statutes regulating, to some extent, where bail may be required and the amount; and sometimes the mode and time of fixing the amount of special bail are prescribed by express legislation. So in the District of Columbia, by congress, in 5 Stat. 499. The amount due in England to require any special bail has at times been as high as £20, in case of debt. Gilb. Ch. Prac. 35, 37; 1 Tidd, Prac. 187. And at times it has not been allowed at all, where the damages were uncertain, as in cases of tort. Gilb. Ch. Prac. 35. See the departures from this in extreme cases of personal injury in England. 1 Bac. Abr. "Bail." In respect to the time and mode of fixing the amount, it seems to be done frequently before the return day of the writ. Before the return of the writ, as in this case, the sheriff in England may give up the bail bond on proper facts. 1 Tidd, Prac. 251; Cowp. 71. And bail above, on a surrender of the principal at any time, may be discharged. 1 East, 383.

If a person, like an attorney, be improperly held to bail, he may on motion at any time be discharged. 1 Wils. 298. And apparently this may be before the writ is returned. Belifante v. Levy, 2 Strange, 1209. So, of a wife arrested. 1 East, 16; 2 Salk. 544. See a case of large reduction in the bail in New York, from $10,000 to $500, in a case of tort. Ballingall v. Burnie, 1 Hall, 237. But in some states, and especially in Massachusetts, the subject of special bail is left very loosely. 17 Mass. 177. In cases of contract there is some test in the debt as to the true amount, and statutes exist disallowing bail at all, unless the sum demanded exceeds a certain sum. In New Hamp-

shire since 1819, the sum demanded must exceed $13.33, the jurisdiction of a justice of the peace. 2 N. H. 492.

But the forms of process requiring bail being established by law, St. N. H. (1830 Ed.) 58, 65, it can usually be taken, whenever not prohibited, and is then by force of the statute regulating the form of process and by the principles of the English law in force when our ancestors emigrated hither, and not by any mere rule of this or other courts, as seems to have been supposed in the argument. Hence, we cannot dispense with it where the law has not dispensed with it. Hence, we must uphold it as not being dispensed with by statute, in all cases sounding in tort, though some sounding in contract, when small, are by statute excepted. I have no doubt, however, that under these circumstances, open as the requisition of large bail to any amount is, without even an oath required by the plaintiff to the amount of his damage, and leaving the defendant much at the mercy of the caprice or passion of a plaintiff, and subject as this matter is to great vexation and abuse when the defendant happens as here to be arrested among strangers, and for which an action for malicious prosecution or for demanding excessive bail is a very inadequate and procrastinated remedy, the course of a plaintiff is to be carefully scrutinized on motions like this. Some impartial officer or judicial tribunal should hold equal scales between the parties and fix the sum as security for them, since neither of them ex parte is very well fitted to regulate it impartially.

Legislation more in detail is certainly needed on this matter; and to show the views of congress in a place where its legislation is exclusive, it proceeded by the act of August 1st, 1842, to provide that in no civil suits special bail shall be required without an affidavit that the respondent is about to abscond, or was guilty of a breach of trust, or using fraud in the contract; and providing that a judge in vacation, or the court in term time, may inquire into these matters. 5 Stat. 499. Again, by act of June 17th, 1844, it was required that the debt should exceed $50 in order to hold to bail at all. 5 Stat. 678.

The statutes of New Hampshire exonerate from any bail administrators, when sued in autre droit, and tenants in real actions, being there a species of proceeding as if in rem. 1 St. N. H. (1830 Ed.) p. 338, § 19. These exceptions seem reasonable, per se, independent of any statute. But in cases of tort the statute of 12 Geo. I., allowing bail in no civil cases except suits on contracts and the debts sustained by affidavit, made a change there. which has but few exceptions. Yet this statute seems never to have been adopted here, either in practice or by statute. 17 Mass. 176, 177. Where the matter is unregulated by statute, as here, and the case is

one which by the general laws of the state is open to the requisition of bail, though in tort, the chief guide in the first instance is the ad damnum. 1 Bac. Abr. "Bail." Next the declaration where the amount appears distinctly there. 8 East, 368. And next, when the amount is afterwards contested in justifying bail in England, or here. in listening to a motion like this to reduce the amount, the affidavits of the parties to the facts bearing on the true amount, are some guide. And finally, other evidence which may throw light on that pertinent and controlling inquiry.

But even then the court will not go into nice questions of law between the parties trying their strict rights, with additions or deductions from the damages, as those questions are settled the one way or the other on apices juris. 4 Barn. & Adol. 467. But the court will merely examine to see what is probably and apparently to be recovered on the general aspect of the action and the evidence. 2 East, 457; [Parassel v. Gautier] 2 Dall. [2 U. S.] 330. Otherwise, looking to legal exceptions, the present writ might not be considered as giving us any jurisdiction, or as justifying any bail. It is, on its face, not between persons, either of whom is averred to be a citizen of Massachusetts, but both citizens of New Jersey, and are merely "commorant" here. Gassies v. Ballon, 6 Pet. [31 U. S.] 761; Bank of U. S. v. Moss, 6 How. [47 U. S.] 31; Sullivan v. Fulton Steamboat Co., 6 Wheat. [19 U. S.] 450. Unless one is averred to be a citizen. of the state where the arrest is made, and not merely commorant there, the jurisdiction is very doubtful. See last cases, and Conk. Prac. 74; Rabaud v. D'Wolf [Case No. 11,-519]; Catlett v. Pacific Ins. Co. [Id. 2,517]; [Wood v. Wagnon] 2 Cranch [6 U. S.] 9; [Capron v. Van Noorden] Id. 126. At the same time, it is nowhere averred that the wrong was committed in this state or within this district or circuit of this court. The subject matter is, to be sure, alleged to be a violation of a patent-right; but it may be doubtful whether even then this court can exercise jurisdiction, when in no way, even under a videlicet, is the wrong averred to have happened in this district, or either party to have been a citizen of it. The facts, too, are understood to agree with these allegations, and hence no amendment except as to the place of the wrong. to be feasible hereafter, and even that amendment might exonerate the bail wholly. But leaving this matter on this motion and going to the case as appearing on the merits in the evidence and declaration, and other legal difficulties are presented. See Knox v. Greenleaf [Case No. 7,909].

It is first apparent that the bills in equity instituted by this plaintiff in New Jersey and New York, against the defendant and others, proceeded on the ground that he was a ten-

ant in common or copartner with the plaintiff in the patent and machines. And though another person was joined on account of other considerations, the liability to account, as a copartner, for his receipts, was the gravamen of the cases, as between the defendant and the plaintiff. It is, therefore, urged that in point of law the plaintiff could not sustain this action for trespass on the case, against his copartner, either for those same proceeds sought to be obtained by the bills or for any other violation of the patent. But without going into this legal objection on this motion, it being an objection which may be hereafter mooted, and on a different state of facts, perhaps, and hence decided differently; it may be observed that usually actions in tort at law will not lie between tenants in common. 2 Johns. 468; 3 Johns. 175; 15 Johns. 179; 1 Chit. Pl. 90; 8 Durn. & E. [8 Term R.] 145; 2 Saund. 476; 4 East, 121; 1 Durn. & E. [1 Term R.] 658; 1 Salk. 290. Though perhaps if one destroy, or violently damage the partnership property, an action might lie, considering the tenancy in common to be thus abolished or severed, and the act as one not done on joint account. Co. Litt. 200; 1 East, 363, 368; Bull. N. P. 9, 34; 4 East, 121; 1 Ld. Raym. 737. Because there he does the injury not as a partner, and it may be, not within the scope of his partnership powers and duties, and is prosecuted for what he does dehors, and beyond his interests in common, and which operates as a tortious wrong to others. Perhaps, too, in this case the plaintiff in this action means to go for damages by the defendant to his patent, caused by constructing a new and different machine, though on like principles, and thus infringing on this, but declining to account for the sales and the infringement. In such a suit it would be proper to join all the owners of the first patent if one of them was not the violator of it; and then the subtle question would arise, whether a copartner could not sue alone for the damage which he alone suffers, to the extent of his interest, by this separate and independent wrong committed by his copartner.

Without deciding this now, but supposing in the hearing of this motion that such a suit may be sustainable, the question then arises, which we are now prepared to dispose of, what is shown to be the probable amount of damages which have thus been sustained by the plaintiff? It is not, as has been argued, and as the plaintiff in a part of his affidavit seems to suppose, the amount claimed in the bills in chancery, for receipts of sales in the first patent, in which they are jointly interested and for which he promised to account, and the allegations as to which sound in contract. That is not the cause before us. But it is an action on the case against him for a misfeasance sounding in tort and not in contract, and claiming damages against him as a wrong-doer, and not an account from him as a copartner.

If it was for the same matter, the arrest and bail required of the large sum of $25,000, when a proceeding in chancery for the same matter was still pending in both New Jersey and New York, would seem to be vexatious, if not, technically barred. Burnham v. Webster [Case No. 2,179]; Aspden v. Nixon, 4 How. [45 U. S.] 467. The parties, as to this special claim, being the same, though all the parties to the bill are not, and the subject in dispute the same, though in different forms of action, the difference would, by analogy to many other cases, be so small as not to justify anything but common or nominal bail. Tidd, Prac. 184, 185; 7 Durn. & E. [7 Term R.] 470; 2 East, 453. It would be enough to defeat a third suit for the same matter pending at the same time, or at least would defeat, as not just and reasonable, large bail being proper in it from the same party, prosecuted in all three of them, though having others associated with him here. The course would be oppressive and vexatious, and hence only common bail demandable. Taylor v. Wasteneys, 2 Strange, 1218; 3 East, 309.

The only plausible position then to justify, requiring any special bail in this action is, that the gist of it is different from the matter in those bills, and that it is not merely for the same matter, nor even as is argued, for like matter arising subsequent to bringing those bills. That last view is open to the objections first named of these parties being, as to that, partners, and not liable to each other for profits of their business, in an action at law, much less an action sounding in tort. Beside this, if it was for like matter, subsequent, the claim could cover only a few months' sales and profits, which from all the evidence, must be small in amount, and require only very reduced bail. If the gist be different, and relate to a new machine colorably different from the first one, which the defendant has built and sold, and appropriated all the profits to himself as if sole owner, then the action may perhaps be maintainable. At all events, I shall not on this motion, for reasons before stated, examine and decide so doubtful a question of law.

Considering this action, then, as maintainable like a suit against a third person for such an infringement, and treating the defendant in that as acting in a separate and independent capacity like a third person, what is the amount of damages that he appears on the evidence to have thus sustained? He does not himself swear that this separate injury is to the extent of $20,000, or to any specific amount, though he intimates in a portion of his affidavit, that he has thus been injured. When he testifies to claims of $20,000 on the defendant as just, it is all his claims of every kind, including those litigated in New York and New Jersey as well as here, and claims against him as partner no less than those

against him as a violator of his patent-right by means of a new machine, founded on the same principles, though set up as new, and as belonging to the defendant, exclusively. There being then no evidence as to the separate amount of damage on this account, the only safe rule is to be governed by the average amount of damages which have been given usually in this class of cases in this state. The value of patents is unequal, the extent and duration of the infringement different; but the highest verdicts rendered here the last ten years have been only about $2,000. Many have been less, and where only $1,200, motions have been made to set verdicts aside as excessive. Allen v. Blunt [Case No. 217]. I see nothing in the facts of this case to justify an expectation of recovering more than $2,000, and the probabilities are in favor of a less sum. The sale of twelve to fifteen machines, not returned, at $100 profits on each would probably cover all. So the original value of the whole patent-right was estimated at only $9,000, as one-third of it was sold for $3,000, so that the whole of the plaintiff's share encroached on would be worth only $6,000, or less than $500 a year for the whole term of fourteen years. This patent had been used only about two years by the defendant. Supposing the cost to be not over an ordinary amount, and $500 more would cover that, it seems to me, then, that the bail should not be more than $2,500, in order to insure not only the appearance of the party, but his abiding the event of a trial.

One view as to the defendant's being among strangers here, and exposed to increased difficulty and expense in getting large bail; and this being the third suit against him for difficulties about their patent-rights, all pending at once, and this being brought, not in New Jersey or New York, where the parties reside, or do business, but in a remote state, would appear to justify reducing the sum still lower. On the contrary, there is some evidence that the defendant has kept out of the way of legal process in New York since the injunction there, and is carrying on his evasions of the plaintiff's rights, without due respect to judicial decisions. This might, perhaps, warrant a larger sum.

The counsel then agreed to a reduction of the bail bond to $4,000, and a rule to that effect was entered accordingly.

[NOTE. In this case leave was given plaintiff to file a supplemental bill making one Calvin L. Goddard a party defendant to the suit. Case No. 10,758. Subsequently, an injunction was granted against Kinsman and Goddard. Id. 10,760. An attachment was issued against Kinsman for violation of this injunction. Case heard upon plaintiff's interrogatories. Id. 10,-759. Upon the hearing on the merits a decree in favor of plaintiff and for an account was entered. Id. 10,757. From the final decree awarding damages upon the master's report an appeal was taken by defendants to the supreme court. Decree affirmed. 18 How. (59 U. S.) 289.]